# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG A. IRVING,<br><br>                       Plaintiff,<br>  vs.<br><br>EBIX, INC.; EBIX SOFTWARE INDIA PRIVATE LIMITED,<br><br>                      Defendants. | CASE NO. 10-CV-762 JLS (BLM)<br><br>**ORDER: GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. Nos. 6) |

Presently before the Court is Defendants' motion to dismiss or stay the case. (Doc. No. 6.) Also before the Court is Plaintiff's opposition and Defendants' reply. (Doc. Nos. 11 & 12.) For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The background of this case is set forth in detail in the Court's Order granting in part Plaintiff's motion for a writ of attachment. (*See* Doc. No. 17 at 1–3.) That summary is incorporated by reference here.

//
//
//
//

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act's provisions reflect a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). This "national policy" is enforceable in both state and federal courts and preempts any state laws or policies to the contrary. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).

A court interpreting an arbitration agreement must resolve ambiguities as to the scope of the arbitration clause in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *AT&T Techs. Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) ("[I]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."). The FAA requires courts to "rigorously enforce agreements to arbitrate" even when such agreements implicate claims arising under federal statutes. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Additionally, it "requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986). The overall mandate for arbitration is defeated only where circumstances demonstrate "a contrary congressional command," with the burden on the party opposing arbitration "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.*

In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, a district court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel, Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation and quotation marks omitted). In construing the terms of an agreement, the Court "appl[ies] general

state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Therefore, a district court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation*, 363 U.S. 574, 582–83 (1960).

## ANALYSIS

**I.     Existence of an Arbitration Provision**

As stated above, ordering the parties to a case to arbitration requires that those parties have contractually agreed to settle disputes through arbitration. 9 U.S.C. § 2. In this case, there is only one contract at issue: the Merger Agreement. This Agreement contains a sharply limited arbitration agreement which provides:

> If the Parties are unable to agree upon the amount of any Cash Merger Consideration or any Contingent Merger Consideration due hereunder, the Parties shall promptly thereafter cause an independent accountant reasonably satisfactory to Parent and the Shareholders' Representative (the "Independent Accountant") to review the disputed item(s) and amount(s) as set forth in the Contingent Gross Revenue Certificate Contest Notice for the purposes of calculating the applicable Contingent Merger Consideration due hereunder. In making such determination, such Independent Accountant shall consider only those items or amounts in the calculation of the Contingent Merger Consideration set forth in the Contingent Gross Revenue Certificate Contest Notice. The Independent Accountant shall deliver to Parent and the Shareholders' Representative, as promptly as practicable (and in any event within 60 days of the Parties' submission of the matter to the Independent Accountant), a report that explains any discrepancies and sets forth the Independent Accountant's calculation of the actual Contingent Merger Consideration due hereunder. Such report and the calculations set forth therein shall be final and binding upon the Parties, and shall not be subject to challenge in a court of law or otherwise. In the event that the Independent Accountant concludes that there was an underpayment of Cash Merger Consideration or Contingent Merger Consideration, Parent and Intermediate Parent, jointly and severally, shall immediately pay the amount by which the Cash Merger Consideration or Contingent Merger Consideration was underpaid, together with simple interest thereon at the rate of eight percent (8%) per annum. The costs and expenses of the Independent Accountant shall be initially be paid by Parent and Intermediate Parent, jointly and severally, but if the Independent Accountant concludes that there was no underpayment of the Contingent Merger Consideration, then such costs and expenses shall be paid by the Shareholders, in the form of a deduction from any future payment of Contingent Merger Consideration (with interest thereon at the

1    rate of eight percent (8%) per annum).

2 (Merger Agreement § 1.2(b)(vi) ("Independent Accountant provision").)

3    Although Plaintiff suggested at oral argument that this is not an arbitration clause, his
4 argument is without merit. A contract need not use the word "arbitration" in order to have an
5 arbitration clause. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1208 (9th Cir. 1998). It need
6 only be an agreement "'to have third parties decide disputes.'" *Id.* (quoting *AMF Inc. v. Brunswick
7 Corp.*, 621 F. Supp. 456, 460 (E.D.N.Y. 1985)).

8    Given that the agreement contains an arbitration provision, was signed by both parties, and is
9 otherwise valid and enforceable, the Court finds that a valid agreement to arbitrate exists.

10 **II.    Scope of the Arbitration Provision**

11    The Court's second task under the FAA requires it to determine "whether the agreement
12 encompasses the dispute at issue." *Cox*, 533 F.3d 1119 (citing *Chiron*, 207 F.3d 1130). The FAA
13 represents a "liberal federal policy favoring arbitration agreements, . . . [and] establishes that, as a
14 matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor
15 of arbitration." *Moses H. Cone*, 460 U.S. at 24–25. Therefore, this Court must "rigorously enforce
16 agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). However,
17 the Court may only order arbitration of claims which the parties have agreed to arbitrate, as the FAA
18 "requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H.
19 Cone*, 460 U.S. at 20.

20    The arbitration clause in this case applies to any disputes or disagreements over the "amount
21 of any Cash Merger Consideration or any Contingent Merger Consideration due" under the Merger
22 Agreement. (Merger Agreement § 1.2(b)(vi).) Defendants argue that Plaintiff's only cause of action
23 falls within the arbitration provision at hand. (Memo. ISO Motion at 7.) Accordingly, Defendants
24 request that this Court dismiss Plaintiff's complaint. (*Id.* at 4.) Because all of the issues raised in this
25 action are not arbitrable pursuant to the arbitration provision, the Court disagrees.

26    Generally, courts grant motions to dismiss in favor of arbitration where the arbitration
27 provision or agreement is broadly-worded and covers all the issues at hand. *See Boston Telecomms.
28 Group, Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 538 (9th Cir. 2007) (finding that an

arbitration provision was sufficiently broad in scope to cover the dispute at hand because it stated that "'[a]ny disputes arising out of the interpretation of [the] agreement" would be settled by arbitration); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1131 (9th Cir. 2000) (clause requiring arbitration of any dispute "relating to" agreement is "broad and far reaching"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720, 726 (9th Cir. 1999) (granting a motion to dismiss where the arbitration clause was broadly worded because it provided for arbitration of all disputes "arising in connection with" the parties' agreement). "In construing the scope of an arbitration clause," courts also "'ascertain and implement the reasonable expectations of the parties.'" *Luna v. Kemira Specialty, Inc.,* 575 F. Supp. 2d 1166, 1179 n.43 (C.D. Cal. 2008) (citation omitted). Because "contracting parties control their own fate when it comes to deciding which disputes to consign to arbitration," the "'strong federal policy favoring arbitration may not extend the reach of arbitration beyond the intended scope of the clause providing for it.'" *Id.* (citation omitted).

In the instant case, the Independent Accountant provision does not entirely encompass the dispute at issue. The provision is not broadly-worded and is instead narrow in scope. It uses no language suggesting arbitration of *all* disputes arising in connection with the Merger Agreement. Rather, the provision is narrow in that it specifies review by an independent accountant if the parties are unable to agree on "*the amount of any Cash Merger Consideration or any Contingent Merger Consideration due*." (Merger Agreement § 1.2(b)(vi)(emphasis added).) Moreover, the provision does not implicate that the parties expected a breach of contract claim or bad faith conduct to be decided by an arbitrator. Instead, the language of the provision is clear that the parties' "reasonable expectation" was that disputes over the amount owed on the Contingent Merger Consideration would be sent to arbitration. (*See id.*)

Plaintiff alleges a claim for breach of contract and argues that the present action involves nonarbitrable issues which "go far beyond any auditing of disputed calculations contemplated by Section 1.2(b)(iv) of the Merger Agreement." (Opp. at 13.) In his opposition, Plaintiff presents the following issues as ones that are beyond the scope of the arbitration provision: 1) statutory interest and attorneys' fees; 2) Defendants' bad faith conduct; 3) evidentiary issues arising from Defendants' altering of an invoice; 4) a collateral agreement after the Merger Agreement which stipulated the

1  amount of the 2008 gross revenues in order to calculate the Second Earn Out; 5) evidentiary issues
2  over disputed receivable accounts and whether Defendants' conduct shows that they in fact wrote
3  off the amounts as uncollectible. (Opp. at 16–19.) .

4      A.    <u>Statutory Interest and Attorneys' Fees</u>

5      Plaintiff's prayer for relief includes statutory interest and attorneys' fees. (Compl. ¶ 28.) The
6  Independent Accountant provision does not provide for the resolution of these matters. Instead, the
7  provision allows for an independent accountant to review disputed items and amounts and to calculate
8  the Contingent Merger Consideration due in the event that the parties are unable to agree on an
9  amount. (Merger Agreement § 1.2(b)(vi).) This does not contemplate arbitration of statutory interest
10 and attorneys' fees. *See Frederick Meiswinkel, Inc. v. Laborers' Union Local 261*, 744 F.2d 1374,
11 1377 (9th Cir. 1984) ("[A]rbitration is a matter of contract and a party cannot be required to submit
12 to arbitration any dispute which he has not agreed so to submit."(citation omitted)); *Sammi Line Co.,*
13 *Ltd. v. Altamar Navegacion S.A.*, 605 F. Supp. 72, 74 (S.D.N.Y. 1985) (finding that "arbitrators may
14 decide only issues submitted for arbitration" and that the respondent had the burden "to demonstrate
15 that an award of attorneys' fees was included within the scope of the arbitrable issues"). Because the
16 Independent Accountant provision does not provide that an independent accountant can or will award
17 statutory interest and attorneys' fees, these issues cannot be submitted to arbitration.

18     B.    <u>Bad Faith Conduct</u>

19     Defendants argue that any alleged bad faith conduct on their part is irrelevant because the issue
20 has no bearing on damages in contract law. (Reply at 9.) Plaintiff, however, does not argue that
21 Defendants' bad faith conduct is relevant for purposes of damages. Rather, Plaintiff argues that
22 Defendants' conduct was a breach of Section 1.2(c) of the parties' agreement. (Opp. at 17.) Section
23 1.2(c) of the Merger Agreement provides, "In order to provide the Shareholders with a reasonable
24 opportunity to receive the maximum Contingent Merger Consideration pursuant to this Agreement,
25 Parent, Intermediate Parent and their Affiliates . . . shall . . . be subject to an express obligation of
26 good faith and fair dealing with respect to the Shareholders, including the Shareholders'
27 Representative." (Merger Agreement § 1.2(b)(vi)). Determining if Defendants acted in bad faith and
28 in fact breached this provision of the Agreement is outside the scope of an Independent Accountant

1  provision whereby an independent accountant's main task is to calculate "the actual Contingent
2  Merger Consideration due." (*Id.*) Thus, the Court finds that the arbitration provision is too narrow
3  in scope to cover a determination as to Defendants' bad faith conduct. This is a matter to be decided
4  by the Court.

5     C.     Altered Invoice

6  Plaintiff next argues that Defendants' altering of an invoice raises evidentiary issues to be
7  determined by the Court. (Opp. at 17.) Specifically, Plaintiff argues that Defendants improperly
8  deducted $158,333 in revenue from Defendants' customer Republic Services and that this amount is
9  supported by an invoice issued by Defendants on October 31, 2009. (Compl. ¶ 16.) That invoice
10 "shows on its face that it is the subscription fee for the October through December 2009 fourth
11 quarter." (*Id.*) Plaintiff contends that Defendants, in an attempt to justify the deduction, provided
12 Plaintiff with an altered invoice allocating a portion of the amounts to 2010 rather than 2009. (Opp.
13 at 18.)

14 In light of Generally Accepted Accounting Principles ("GAAP"), the question of whether the
15 first invoice was altered appears irrelevant. The Regulations of the Treasury Department provide that
16 "a method of accounting which reflects the consistent application of generally accepted accounting
17 principles . . . will ordinarily be regarded as clearly reflecting income." Treas. Reg. § 1.446-1(a)(2).
18 GAAP, as described in Statement of Financial Accounting Concepts Number 5 of the Financial
19 Accounting Standards Board, provides that "revenue should not be recognized until it is realized or
20 realizable and earned." Staff Accounting Bulletin No. 101, 64 Fed. Reg. 68,936 (Dec. 9, 1999) ("SAB
21 101"). Generally, revenue is realized or realizable and earned when four criteria are met: 1)
22 persuasive evidence of an arrangement exists; 2) delivery has occurred or services have been rendered;
23 3) the seller's price to the buyer is fixed or determinable; and 4) collectibility is reasonably assured.
24 *Id.* Moreover, the Ninth Circuit has emphasized that GAAP requires revenue to be "earned" before
25 it can be recognized. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005); *Provenz v.*
26 *Miller*, 102 F.3d 1478, 1484 (9th Cir. 1996). Generally, revenues are "earned" when an entity "has
27 substantially accomplished what it must do to be entitled to the benefits represented by the revenues."
28 SAB 101.

1    In light of these GAAP principles, the relevant questions have to do with the terms of Defendants' contract with Republic Services. And these are questions which may, and must, be decided through arbitration pursuant to the Independent Accountant provision.

### D.    Collateral Agreement

Plaintiff also argues that Defendants made a second improper deduction that involves contract interpretation and breach rather than accounting. (Opp. at 18.) Specifically, Plaintiff argues that the parties entered into an agreement subsequent to the Merger Agreement whereby the parties expressly stipulated the amount of the 2008 gross revenues "for the express purpose of calculating the Second Earn Out." (*Id.*)

Defendants make no argument in response to establish that the issue of the collateral agreement is in fact subject to arbitration. In effect, Defendants concede that the collateral agreement issue is not arbitrable.

That said, it is clear to the Court that the extent of Defendants' obligations under this agreement must be resolved prior to this case proceeding to arbitration. This is because the Second Earn Out is calculated based off of Defendants' 2008 gross revenues. As such, Plaintiff **SHALL FILE** a motion for summary judgment with respect to this issue <u>within 28 days of the date this order is electronically docketed</u>.

### E.    Receivable Accounts

The final issue that Plaintiff raises as outside the scope of the arbitration provision pertains to an alleged third improper deduction made by Defendants. (*Id.* at 19.) Plaintiff argues that Defendants documentation establishes that they did not in fact write-off ConfirmNet accounts receivable as uncollectible in 2009. (*Id.*) Rather, Plaintiff argues that Defendants collected one-third of these amounts before certifying the amount of the Second Earn Out and continue to collect the remaining two-thirds. (*Id.*) Thus, Plaintiff claims that Defendants' third deduction on the basis that the accounts were uncollectible was improper. (*Id.*)

The Independent Accountant provision allows an independent accountant to consider disputed items for purposes of calculating the applicable Contingent Merger Consideration. (Merger Agreement § 1.2(b)(vi).) Here, the receivable accounts are "disputed" items and pertinent to

1 calculating the Contingent Merger Consideration. That is, Plaintiff argues that these items were not
2 properly excluded from revenue. (Compl. ¶ 5–6.) As such, determination of whether these accounts
3 were actually written of or whether that would, in any event, effect gross revenue is a question
4 properly before the independent accountant and within the scope of arbitration.

        F.        Conclusion

For all of the above reasons, the Court finds that the arbitration provision contemplated by the parties is insufficiently broad to cover the *entire* dispute at hand. As such, dismissal of the Complaint is inappropriate and the Court **DENIES** Defendants' motion insofar as it seeks that relief.

**III.    CONDITION PRECEDENT**

Plaintiff argues that the arbitration provision contemplated by the parties is subject to a condition precedent. (Opp. at 8–9.) Specifically, in order for Defendants to invoke the Independent Accountant provision "Defendants were required to pay the Second Earn Out 'in no event later than' January 30, 2010, as well as provide Shareholders' Representative with a Contingent Gross Revenue Certificate 'not later than' January 30, 2010." (*Id.* at 9 (citation omitted).) Accordingly, Plaintiff requests that this Court deny Defendants' right to compel arbitration. The Court disagrees.

California Civil Code § 1436 provides that "[a] condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Cal. Civ. Code § 1436. A condition precedent can be "either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *Platt Pacific, Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993) (citations omitted). There are three types of conditions: "(1) express conditions-those that are determined by the intention of the parties as disclosed in the agreement; (2) conditions implied in fact by the interpretation of the agreement and surrounding circumstances; and (3) constructive conditions, or conditions implied by law, irrespective of the parties' intent, to avoid injustice." *In re Spirtos* 154 B.R. 550, 555 (B.A.P. 9th Cir. 1993) (citations omitted).

The Merger Agreement does not "expressly" provide that Defendants can only invoke their right to arbitration if they timely paid the Second Earn Out and delivered a Contingent Gross Revenue Certificate. Although Section 1.2(b)(i) of the agreement provides that "[n]ot later than . . . January

30, 2010 (for the Second Earn Out) . . . Parent shall deliver to each Shareholder a copy of the financial statements . . . and a certificate showing the calculation," it does not state that arbitration can only be invoked in the event that Section 1.2(b)(i) is satisfied. (Merger Agreement § 1.2(b)(i).) Rather, the provision merely states that "[i]f the Parties are unable to agree upon the amount of any . . . Contingent Merger Consideration due hereunder, the Parties shall promptly thereafter cause an independent accountant . . . to review the disputed item(s) and amount(s)." (*Id.* § 1.2(b)(vi).) Thus, paying on time and delivering a certificate is not an express condition precedent to Defendants' contractual right to arbitration under Section 1.2(b)(vi).

Conditions precedent can also be implied in law or in fact. Conditions are implied in fact "interpretation of the agreement" or implied by law "irrespective of the parties' intent" to avoid injustice. *In re Spirtos* 154 B.R. at 555. Here, interpretation of the agreement does not imply that Defendants could not rely on their right to arbitration if they breached another subsection of the agreement. (*See* Merger Agreement § 1.2(b)(vi).); *see also In re Spirtos* 154 B.R. at 555 (finding that "[c]onditions are [generally] not favored and an intent to create a condition must appear expressly or by clear implication in the agreement" (citations omitted)). Finally, nothing suggests that injustice will result if Defendants assert their contractual right to arbitration. Accordingly, the Court finds that the Independent Accountant provision is not subject to a condition precedent that Defendants timely pay and deliver a Contingent Gross Revenue Certificate.

The Court also rejects Plaintiff's argument that the Independent Accountant provision has no application where one of the parties breaches the Merger Agreement. (*See* Opp. at 11.) In order to support his argument, Plaintiff relies on Section 11.9 of the Merger Agreement which allegedly provides:

> The Parties hereto hereby submit to the exclusive jurisdiction of any state or federal court located in the State of California over any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby, and further agree that venue for all such matters shall lie exclusively in such court.

(Opp. at 12 (citing Merger Agreement § 11.9) (emphasis omitted).) Although this provision may be interpreted to provide for litigation, it is a "well established [principle] of contract interpretation" in California that "when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision." *Jadwin v. County of Kern* 610 F. Supp. 2d 1129,

1190 (E.D. Cal. 2009) (citing *Prouty v. Gores Tech. Group,* 18 Cal. Rptr. 3d 178 (Cal. Ct. App. 2004) and *McNeely v. Claremont Mgmt. Co.,* 27 Cal. Rptr. 87 (Cal. Ct. App. 1962)). Moreover, California courts "consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation." *Am. Alternative Ins. Corp. v. Superior Court*, 37 Cal. Rptr. 3d 918, 922 (Cal. Ct. App. 2006) (citing Cal. Civ. Code § 1641).

Here, the "specific provision" at hand is the Independent Accountant provision which expressly provides for an independent accountant to calculate the Contingent Merger Consideration in the event that the parties are unable to agree on the amount. (Merger Agreement § 1.2(b)(vi).) As such, Section 1.2(b)(vi) qualifies Section 11.9. The general provision, Section 11.9, does not negate the specific provisions of Section 1.2(b)(vi). Moreover, it is not possible to focus on an isolated portion of the contract in order to argue in favor of litigation when the contract considered in its entirety clearly contemplates arbitration on a given issue— disagreement over the amount due on any Contingent Merger Consideration. (*See id.*)

In light of the entire contract, the Court finds that nothing suggests that Defendants may not rely on the Independent Accountant provision in the event of a breach. The specific language of Section 1.2(b)(vi) provides for arbitration, and Section 11.9 does not suggest that a party forfeits its right to arbitration in the event that it breaches the contract.

**IV. WAIVER**

In his opposition, Plaintiff also argues that Defendants waived their right to compel enforcement of the Independent Accountant provision by "refusing to perform their obligations under the Merger Agreement." (Opp. at 10.) The Court finds that Defendants' actions are insufficient to constitute a waiver of their contractual right to arbitrate this dispute.

A party may waive its right to compel arbitration, however, "waiver of a contractual right to arbitration is not favored." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *see also Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005). Rather, waiver of a right to compel arbitration is analyzed in light of "the strong federal policy favoring enforcement of arbitration agreements." *Fisher*, 791 F.2d at 694. In order for Plaintiff to prevail on this argument, he must demonstrate (1) that Defendants knew they had a right to compel arbitration, (2) that Defendants acted

in a manner inconsistent with that existing right, and (3) that Plaintiff suffered prejudice from those inconsistent acts. *Britton*, 4 F.3d at 1412. Plaintiff, in its attempt to satisfy this standard, "bears a heavy burden of proof." *Id.* (citing *Fisher*, 791 F.2d at 694). Regardless, the Court finds that Plaintiff has not demonstrated facts satisfying the waiver test.

Although Plaintiff does not address the first prong of the waiver test, it is clear that Defendants knew they had a right to compel arbitration by citing it as the main reason for their motion to dismiss. (*See* Memo. ISO Motion at 4.)

To demonstrate the second prong of the waiver test, Plaintiff argues that Defendants intentionally abandoned their right to rely on the Independent Accountant provision by failing and refusing to pay the Second Earn out and to provide the Contingent Gross Revenue Certificate by January 30, 2010. (Opp. at 10.) According to Plaintiff, these acts were inconsistent with Defendants' right to rely on the arbitration provision. (*Id.*)

When the Ninth Circuit has found waive based on acts inconsistent with a right to arbitration, it has involved situations unlike the present action. *See Hoffman Const. Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (finding that the party acted inconsistently with its right to arbitration by withdrawing its request to arbitrate and filing suit in state court); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) (holding that the party acted inconsistently with its right to arbitration where the party actively litigated the claims for more than two years). Moreover, the Ninth Circuit has declined to find waiver in many situations given that "waiver of a contractual right to arbitration is not favored." *Fisher*, 791 F.2d at 694 (finding that the party had not waived its arbitration rights even though the party failed to raise the arbitration issue as an affirmative defense and the parties had engaged in extensive discovery); *see also Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1186 (9th Cir. 1986) (holding that defendants had not waived any right to compel arbitration even though defendants did not seek arbitration until nine months after filing their answer). In this case, there was no long delay before arbitration was sought. Rather, Defendants immediately raised the issue of arbitration in their Motion to Dismiss. (Memo. ISO Motion at 4.) Defendants' acts do not suggest that Defendants have waived or have acted inconsistently with their contractual right to compel arbitration.

Plaintiff relies on California state law and cites a California case in order to argue that a party's failure to perform acts under an agreement may result in waiver of right to compel arbitration. (*See* Opp. at 10 (citing *Engalla v. Permanente Med. Group*, 15 Cal. 4th 951 (1997)). However, the Ninth Circuit has found that "the strong default presumption is that the FAA, not state law, supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002) (citations omitted). Accordingly, "waiver of the right to compel arbitration is a rule for arbitration, such that the FAA [rather than state law] controls." *Id.* at 1270. Thus, a case decided by the California Supreme Court is not dispositive here.

Regardless, *Engalla v. Permanente Med. Group* does not establish that Defendants acted inconsistently with a right to arbitration. In *Engalla*, the California Supreme Court remanded a medical malpractice case so that the lower court could decide if the defendant waived its right to arbitration. *Engalla*, 15 Cal. 4th at 984. In its decision to remand, the court found that the defendant may have waived its right to arbitration by engaging in dilatory conduct to postpone an arbitration hearing until after the employee had died. *Id.* The court found that a bad faith delay *as to arbitration* could constitute a waiver of the defendant's right to arbitration. *Id.* Moreover, the court emphasized that in order for the delay to constitute a waiver it must be "substantial, unreasonable, and in spite of the claimant's own reasonable diligence." *Id.*

None of these facts pertain here. Defendants have not engaged in conduct with the bad faith intention of delaying arbitration. To the contrary, they immediately asserted their right to arbitration in their Motion to Dismiss. (Memo. ISO Motion at 4.) Any other delay asserted by Plaintiff is not "substantial" or "unreasonable" in light of the fact that waiver "'is not to be lightly inferred.'" *Id.* (citation omitted). Thus, even if *Engalla* were controlling authority, the Court would still not find waiver.

As to the third prong of the waiver test, Plaintiff argues that he was prejudiced by Defendants' withholding payment until after the January 30, 2010 deadline. (Opp. at 10.) While this might be prejudice caused by Defendants' alleged breach of the Merger Agreement, it is not clear that this is prejudice as to Defendants' acts with respect to arbitration. Even if Plaintiff were to establish prejudice, he has still failed to sow that Defendants acted inconsistent with their arbitration right.

From these considerations and in light of the Ninth Circuit precedent which does not "lightly find waiver of the right to arbitrate," the Court finds that Defendants have not waived their right to compel arbitration pursuant to the Independent Accounting provision in the Merger Agreement. *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citing *Van Ness Townhouses*, 862 F.2d at 758).

## V.   Stay the Proceeding

In the alternative to its motion to dismiss, Defendants request that the Court order a stay pending arbitration proceedings. (Memo. ISO Motion at 7.) Pursuant to 9 U.S.C. § 3, the Court may order a stay "pending compliance with a contractual arbitration clause." *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.,* 586 F.2d 143, 147 (9th Cir. 1978). The FAA provides,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C § 3. Accordingly, there are two prerequisites to granting a stay order: 1) the issue is referable to arbitration under an agreement in writing for such arbitration; and 2) the applicant for the stay is not in default in proceeding with such arbitration. *See* 9 U.S.C § 3.

As noted above, the Independent Accountant provision of the Merger Agreement provides for arbitration of disagreements regarding the Contingent Merger Consideration due. *See Wolsey*, 144 F.3d at 1208. Thus, the first requirement is met.

As to the second requirement, Defendants are the applicants for the stay. (Memo. ISO Motion at 7.) Nothing suggests that Defendants are in default in proceeding with such arbitration. *See Saint Agnes Med. Ctr. v. PacifiCare* 31 Cal. 4th 1187, 1195 (2003) (finding that although the "'principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred'" (citation omitted).) Given the strong federal policy favoring arbitration, the Court **GRANTS** Defendants' request and **STAYS** the case with regard to all issues save the Defendants' obligations under the collateral agreement.

**CONCLUSION**

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion. Defendants' motion is **DENIED** to the extent that it seeks to dismiss the Complaint and **GRANTED** insofar as it seeks a stay. The Court **STAYS** this case as to all issues other than the effect of the collateral agreement. Plaintiff **SHALL FILE** a motion for summary judgment with respect to the collateral agreement <u>by October 1, 2010</u>. Once that motion has been decided, the Court will send the parties to arbitration with respect to the arbitrable issues noted above.

IT IS SO ORDERED.

DATED: August 10, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge